## UNITED STATES v. ROSSI.

### (District Court, D. Oregon. October 18, 1920.)

#### No. C–8929.

1. **Counterfeiting ⊚⇒2—Altering nonnegotiable government securities offense.**

     Pen. Code, §§ 148, 151, 154 (Comp. St. §§ 10318, 10321, 10324), making it an offense, with intent to defraud, to alter or counterfeit any security or obligation of the United States, or to pass such forged security, or to buy or sell the same, with intent that it be passed, are applicable alike to negotiable and nonnegotiable securities or obligations.

2. **Counterfeiting ⊚⇒2, 8—Alteration of war savings certificates constitutes crime; "obligation of United States."**

     A war savings certificate, issued pursuant to Act Sept. 24, 1917, § 6 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 6829l), with stamp or stamps affixed thereto, and the name of the owner written thereon, is an obligation of the United States within Penal Code, §§ 148, 151, 154 (Comp. St. §§ 10318, 10321, 10324), and the removal of the stamp therefrom with intent to defraud constitutes an alteration within section 148, and the uttering or passing the stamp so removed with like intent is an offense, under section 151. When such a certificate has been registered, the removal or erasure of the registration number with intent to defraud constitutes an alteration; but the erasure of the serial number, which is not material to its validity, does not.

     [Ed. Note.—For other definitions, see Words and Phrases, Second Series, Obligation of United States.]

3. **Counterfeiting ⊚⇒16—Indictment for altering war savings certificates good.**

     An indictment for altering or counterfeiting war savings certificates is not predicated on a violation of the regulations under which such certificates are issued, but solely on the provisions of the Criminal Code.

4. **Counterfeiting ⊚⇒16—Indictment for altering government obligation should set out obligation.**

     An indictment for altering or counterfeiting a government obligation, or for passing the same, or having it in possession with intent to defraud, should set out the obligation in hæc verba, or allege some potent reason why that cannot be done.

5. **Counterfeiting ⊚⇒16—Indictment for altering war savings certificate insufficient.**

     An indictment for altering a war savings certificate with intent to defraud, by erasing the registration number, *held* bad, where it did not show by appropriate allegation that the certificate had been registered.

Criminal prosecution by the United States against Angelo H. Rossi. On demurrer to indictment. Demurrer sustained.

---

⊚⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Lester W. Humphreys, U. S. Atty., and John C. Veatch, Asst. U. S. Atty., both of Portland, Or.

Barnett H. Goldstein, of Portland, Or., for defendant.

WOLVERTON, District Judge. Rossi is indicted under 19 counts. A short analysis of the several counts will suffice for the present inquiry.

Counts 1, 4, 7, 10, and 13 charge that Rossi, with intent to defraud, did pass, utter, and sell certain altered obligations of the United States, being certain war savings certificate stamps, which were altered by having removed and erased from the face thereof a certain registration and identification number, to wit, No. 50819.

Counts 2, 5, 8, and 11 charge that Rossi, with intent to defraud, did pass, utter, and sell certain altered obligations and securities of the United States, namely, certain war savings certificate stamps, which were altered by being removed from the certificate or certificates to which they had theretofore been attached.

Counts 3, 6, 9, 12, and 14 charge that Rossi did sell, transfer, and deliver to a person named certain obligations and securities of the United States, namely, certain war savings certificate stamps, which were altered by having removed and erased from the face thereof a certain registration and identification number, with intent that such war savings certificate stamps be passed and used as true and genuine.

Count 15 charges the defendant with having and keeping in his possession, with intent to defraud, certain altered obligations and securities of the United States, namely, certain war savings certificate stamps, which were altered by having removed and erased from the face thereof a certain registration and identification number, to wit, No. 50819. Counts 16 and 17 are predicated upon like allegations, except that the alteration consists of having removed the war savings certificate stamps from the war savings certificates to which they had theretofore been attached.

Count 18 charges the buying and receiving from a person named, with intent that they be passed as true and genuine, certain altered obligations and securities of the United States, namely, certain war savings certificate stamps, which alteration consisted in the removing and erasing of the registration and identification number, to wit, No. 50819.

Count 19 charges Rossi with falsely altering certain war savings certificates, of series given, with intent to defraud, by attaching to each of said certificates war savings certificate stamps which had theretofore been removed from other war savings certificates.

The sufficiency of each of these counts is challenged by demurrer.

By section 6 of the Act of Congress of September 24, 1917 (40 Stat. 288, 291 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 6829*l*]), the Secretary of the Treasury is authorized to borrow money on the credit of the United States, to meet certain designated public expenditures, such sum or sums as in his judgment may be necessary—

"and to issue therefor, at such price or prices and upon such terms and conditions as he may determine, war savings certificates of the United States on which interest to maturity may be discounted in advance at such rate or

rates and computed in such manner as he may prescribe. Such war savings certificates shall be in such form or forms and subject to such terms and conditions, and may have such provisions for payment thereof before maturity, as the Secretary of the Treasury may prescribe. Each war saving certificate so issued shall be payable at such time, not exceeding five years from the date of its issue, and may be redeemable before maturity, upon such terms and conditions as the Secretary of the Treasury may prescribe. * * * The Secretary of the Treasury may, under such regulations and upon such terms and conditions as he may prescribe, issue, or cause to be issued, stamps to evidence payments for or on account of such certificates."

By Department Circular No. 94 (War Savings Circular No. 1), bearing date November 15, 1917, the Secretary of the Treasury offered for sale an issue of United States war savings certificates, series of 1918. The circular prescribes that—

"Payments for or on account of such war savings certificates must be evidenced by United States war savings certificate stamps, series of 1918, which are to be affixed thereto."

The regulations further prescribe that—

"A United States war savings certificate, series of 1918, will be an obligation of the United States when, and only when, one or more United States war savings certificate stamps, series of 1918, shall be affixed thereto. * * * No war savings certificate will be issued unless at the same time one or more war savings certificate stamps shall be purchased and affixed thereto. * * * The name of the owner of each war savings certificate must be written upon such certificate at the time of the issue thereof."

Further than this, provision is made by the regulations whereby war savings certificates may be registered—

"at any post office of the first, second, or third class, and payment in respect of any certificate so registered will be made only at the post office where registered. Unless registered, the United States will not be liable if payment in respect of any certificate or certificates be made to a person not the rightful owner thereof."

By another regulation:

"War savings certificates are not transferable, and will be payable only to the respective owners named thereon," except in case of death or disability.

Like regulations were promulgated embracing war savings certificates of the issue of 1919, by Department Circular No. 128, of date December 18, 1918.

[1] In the light of the act and the department regulations, provision is made for the issuance of two kinds of documents, namely, war savings certificates and war savings certificate stamps; but these documents become obligations of the United States only when a stamp or stamps shall have been affixed to the certificate and the name of the owner or owners shall have been written upon the certificate. Such certificates, when so made up and completed, it may be confidently affirmed, are obligations or securities of the United States, within the purview of sections 148, 151, and 154 of the Penal Code (Comp. St. §§ 10318, 10321, 10324). Separately considered, neither the stamp nor the certificate can be deemed such an obligation. Although the completed certificates are made nontransferable by the regulations, that could have no significance where an attempt was made to counter-

feit or alter them, or to pass, utter, or sell, or to have in possession such as had been forged, altered, or counterfeited, with intent to defraud, or that they should be passed, published, or used as true and genuine, in violation of sections 148, 151, and 154 of the Penal Code. In other words, their transferability or nontransferability does not in any way modify the offenses denounced by these sections of the Code.

[2] With these premises, I will proceed to answer the questions propounded by counsel for defendant under the title points involved.

The first has already been answered, that a war savings certificate, with a war savings certificate stamp or stamps affixed, which bears the name or names of the owner or owners written thereon, is an obligation of the United States within the meaning of the sections of the Code above designated.

Second. Such obligations must be deemed to be altered, within the meaning of such sections, when the stamps have been removed from the certificates to which they have been annexed, with intent to defraud, or to utter and pass the same (the stamps) as true and genuine. It is not significant whether the stamps so detached are transferable or not transferable. But it is significant that the person so having such altered obligations is attempting to deal with them with the intent to defraud, or as true and genuine.

Third. I am of the opinion that it is not an alteration or forgery of such war savings certificates, fully made up, to erase or remove the serial number thereof, because such serial number is not a material element of the obligation. The obligation is just as potent in the hands of the holder without as with the serial number. But if the certificate has been registered, as provided by the departmental regulations, and given a registration number, it would, without question, constitute a forgery or an alteration to erase or remove the registration number with intent to defraud, within the meaning of the sections of the Penal Code referred to, because such number is made an essential element to the validity of the obligation. The purpose of affixing the number or numbers is for identification of the obligation at the post office where payable, and for the protection of the government, to ward against payment to the wrong person, or double payment, as well as for the protection of the lawful owner and holder of the certificate or certificates.

"That is a material alteration, which so changes the terms of the instrument as to give it a different legal effect from that which it originally had, and thus works some change in the rights, interest, or obligations of the parties." 1 R. C. L. 967.

[3] Fourth. It is an erroneous conception to affirm that the charges contained in the present indictment are predicated upon any violation of the departmental regulations respecting war savings certificates, or disobedience of any of such regulations. The charges are predicated alone upon a violation of the designated sections of the Penal Code. The regulations have to do with the regularity and validity of war savings certificates as obligations of the United States, and when the war savings certificates become such obligations, then the sections of the Code denouncing alteration, purchase, sale, transfer, possession, or utterance,

with the intent to defraud, or to pass as true and genuine, become applicable. If the validity of the paper itself were attacked, that would be quite another thing. Then it would be pertinent to examine the act and the regulations to determine whether the certificates were legal and valid obligations of the United States. It requires no pleading of the statute or the regulations for a regular presentation of the subject for consideration. The court takes judicial notice of these.

[4] Fifth. An indictment for forging or altering a government obligation, or for passing the same or having it in possession with intent to defraud, or to pass it as true and genuine, should set forth the obligation in hæc verba, or some potent reason should be alleged showing why that cannot be done. People v. Tilden, 242 Ill. 536, 90 N. E. 218, 31 L. R. A. (N. S.) 215, 134 Am. St. Rep. 341, 17 Ann. Cas. 496; United States v. Fisler, Case No. 15,105, 25 Fed. Cas. 1091.

[5] Measured by these conclusions, all the counts in the indictment are bad, by reason of not having set forth in hæc verba the obligations of the government alleged to have been dealt with by defendant. And those counts purporting to charge the defendant with having erased or effaced the registration and identification number, to wit, No. 50819, are also bad, in not having alleged by appropriate averments that such certificates had been previously registered.

The demurrer will therefore be sustained to each count in the indictment.